UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| GURPREET S. PADDA, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) Case No. 4:21-cv-00492-SEP |
| | ) |
| XAVIER BECERRA, et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

Before the Court is a Motion for Temporary Order and Preliminary Injunction by Plaintiffs Gurpreet S. Padda and the Interventional Center for Pain Management, P.C.  Doc. [3]. The Court held a hearing on May 6, 2021, and issued an oral ruling denying the Motion the following day.  This Memorandum and Order follow.

**I.   BACKGROUND**

This case arises from a dispute between a healthcare provider and the Department of Health and Human Services (HHS) over the procedure for evaluating and collecting overpayments for services rendered to Medicare patients.  Plaintiff Gurpreet S. Padda is board-certified in anesthesiology, pain management, and addiction medicine.  Doc. [1] ¶ 11.  He is the sole owner of Plaintiff Interventional Center for Pain Management, P.C., a clinic operating in St. Louis, Missouri.  Doc. [1] ¶ 11.

Plaintiffs bring this action against Xavier Becerra, in his official capacity as Secretary of HHS; Elizabeth Richter, in her official capacity as Acting Administrator for the Centers for Medicare and Medicaid Services; and the Wisconsin Physician Service Insurance Corporation. Doc. [1] ¶¶ 14-17.  Plaintiffs seek to enjoin Defendants from collecting payments or withholding future remuneration to recoup alleged overpayments of $5.6 million.  Doc. [3-1] at 2, 4. Plaintiffs bring three causes of action against Defendants:  Count I for violations of procedural due process; Count II for violations of substantive due process; and Count III for injunctive relief under the APA.

1

Defendants oppose injunctive relief and move for dismissal under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. Doc. [12-1].

## II.    SUBJECT MATTER JURISDICTION

As a threshold matter, the Court finds that it does have subject matter jurisdiction over this action.[1] The Medicare Act vests district courts with authority to review final decisions of the Secretary of HHS to the same extent provided in the Social Security Act. 42 U.S.C. § 1395ff(b)(1)(A) (incorporating 42 U.S.C. § 405(g)). Section 405(g) allows for judicial review if two elements are satisfied: First, "that a claim . . . shall have been presented to the Secretary" and second, "that the administrative remedies prescribed by the Secretary be exhausted." *Mathews v. Eldridge*, 424 U.S. 319, 328 (1976).

While presentment of the underlying substantive claim to the agency is a nonwaivable— and, as such, "purely 'jurisdictional,'" *id.*—prerequisite for judicial review under § 405(g), a party is not required to have raised with the Secretary a constitutional claim that "[t]he Secretary would not be required even to consider." *Id.* at 329. Plaintiffs' due process claim here appears to be just such a claim. Thus, Plaintiffs have satisfied § 405(g)'s presentment requirement here, as Eldridge himself had. *Id.* at 329-30.

Unlike presentment, § 405(g)'s exhaustion requirement is waivable. Thus, this Court may have authority to review Plaintiffs' due process claim under § 405(g) if *either* Plaintiffs exhausted their administrative remedies *or* the Court determines that the exhaustion requirement should be waived. "Exhaustion is generally required as a matter of preventing interference with agency processes, so that the agency may function efficiently and so that it may have an opportunity to correct its own errors, to afford the parties and the courts the benefit of its experience and expertise, and to compile a record which is adequate for judicial review." *Degnan v. Burwell*, 765 F.3d 805, 808 (8th Cir. 2014) (quoting *Weinberger v. Salfi*, 422 U.S. 749, 765 (1975)). Plaintiffs here do not claim to have exhausted their administrative remedies, but the Court may waive exhaustion if Plaintiffs demonstrate: "(1) their claims to the district

---

[1] To justify dismissal under Rule 12(b)(1), "the complaint must be successfully challenged on its face or on the factual truthfulness" of its assertions. *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993). Defendants argue that the Court does not have jurisdiction because Plaintiffs have not exhausted the administrative process—a point that Plaintiffs concede. Thus, the Court will consider Defendants' position as a facial challenge and will presume true "all of the factual allegations concerning jurisdiction." *Id.*

court are collateral to their claim of benefits; (2) that irreparable injury will follow; and (3) that exhaustion will otherwise be futile." *Id.* (quoting *Titus v. Sullivan*, 4 F.3d 590, 592 (8th Cir. 1993)).

Plaintiffs ask this Court to enjoin Defendants' recoupment of overpaid funds because allowing such recoupment before their claims are reviewed by an administrative law judge would violate their constitutional right to due process. Characterizing an objection to agency action as a violation of due process does not guarantee an exemption from the exhaustion requirement. *See, e.g.*, *Taransky v. Sec'y of U.S. Dep't of Health and Hum. Servs.*, 760 F.3d 307, 321 (3d Cir. 2014) (no excuse from exhaustion requirement when premise of constitutional claim was "an artful attempt to rephrase" violations of Medicare Act as due process violations). Rather, in order to be excused from exhaustion, Plaintiffs must first show that their due process claim is "collateral" to their claims before the agency. That is, it "must not require the court to 'immerse itself' in the substance of the underlying Medicare claim or demand a 'factual determination' as to the application of the Medicare Act." *Family Rehab., Inc. v. Azar*, 886 F.3d 496, 501 (5th Cir. 2018) (quoting *Affiliated Pro. Home Health Care Agency v. Shalala*, 164 F.3d 282, 285-86 (5th Cir. 1999)).

Defendants argue that Plaintiffs' due process claims are not collateral to their claims before the agency, pointing to Plaintiffs' repeated discussion of the merits of those underlying claims—namely, that the services rendered were compensable and the statistical sample is too small to pass muster. Doc. [12-1] at 12-13. Neither of those arguments has any bearing on whether Plaintiffs have the right to a hearing before an administrative law judge before recoupment. Because the Court need not consider those arguments to determine Plaintiffs' right to a hearing, Plaintiffs' due process claims are collateral to Plaintiffs' claims before the agency.

Next, the Court must consider whether "irreparable injury will follow" from exhaustion. *Degnan*, 765 F.3d at 808. Courts should "be especially sensitive to irreparable injury where the Government seeks to require claimants to exhaust administrative remedies merely to enable them to receive the rights that they should have been afforded in the first place." *Family Rehab.*, 886 F.3d at 504 (citing *Bowen v. City of New York*, 476 U.S. 467, 484 (1986)) (cleaned up). Plaintiffs alleged that immediate recoupment will "cause irreparable harm in the form of financial ruin, forced termination of employees, and certain closure of Dr. Padda's medical

3

practice." Doc. [1] ¶ 8.  Additionally, Plaintiff Padda submitted a declaration stating that he would expect to have to close his business within one month if recoupment commences.

Whether Plaintiffs' modest evidentiary showing is sufficient to support irreparable harm for the purpose of establishing this Court's jurisdiction over the request for emergency injunctive relief is a close question.  "Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages. *Gen. Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 319 (8th Cir. 2009).  But the threat of closing a business can constitute irreparable harm.  *See Doran v. Salem Inn, Inc.*, 422 U.S. 922, 932 (1975) (allegations of "substantial loss of business and perhaps even bankruptcy" established irreparable harm).  On the other hand, Plaintiffs arguably assumed the risk of recoupment when they "voluntarily signed up for Medicare program and structured [their] business in the way [they] did." *Compassus OP of Missouri, LLC v. Azar*, 2018 WL 6179533, at *3 (E.D. Mo. Nov. 27, 2018) (considered and denied request for injunctive relief despite "strong doubts" about jurisdiction).  Still, for the purposes of reviewing the motion to dismiss, the Court assumes Plaintiffs' allegations relating to irreparable harm to be true and finds them sufficient to satisfy the *Mathews* standard for an exemption from § 405(g)'s exhaustion requirement.  *See Family Rehab.*, 886 F.3d at 504.

Last, Plaintiffs must show that exhaustion would be futile.  The exhaustion exception in *Mathews* "is grounded in the futility of making a constitutional challenge before an agency and in the absence of available alternative grounds for a decision." *Jensen v. Schweiker*, 709 F.2d 1227, 1229 (8th Cir. 1983) (citing *Mathews*, 424 U.S. at 329).  Defendants contend that Plaintiffs have conceded that exhaustion is not futile by arguing that they are likely to prevail on the merits of their claims before the administrative law judge.  Doc. [12-1] at 19.  That argument misses the mark.  Plaintiffs will present claims about the calculation of alleged overpayments to the administrative law judge, not their claim that the agency's failure to meet the 90-day deadline for a hearing violates their constitutional rights.  As a matter of fact, if Plaintiffs were to try to exhaust the administrative process before seeking judicial review of their due process claim, they would suffer the alleged deprivation of their due process rights without ever having had the opportunity to challenge the agency's failure to meet its statutory obligation.  *See Mathews*, 424 U.S. at 329.  Thus, as to their due process claim, exhaustion would be futile.

4

Because Plaintiffs' due process claim qualifies for *Mathews*'s exemption from § 405(g)'s exhaustion requirement, the Court does have the authority to review Plaintiffs' Motion. *See Family Rehab.*, 886 F.3d at 504.

## III. INJUNCTIVE RELIEF

Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 22 (2008) (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam)). In determining whether to issue a TRO, the Court must consider four factors: (1) the threat of irreparable harm to the movant; (2) the balance between that harm and the harm that granting the injunction will inflict on other parties; (3) the probability that movant will prevail on the merits; and (4) the public interest. *Dataphase Sys., Inc. v. CL Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981) (en banc); *see also City of Berkeley v. Ferguson-Florissant Sch. Dist.*, 2019 WL 1558487, at *2 (E.D. Mo. Apr. 10, 2019). "While 'no single factor is determinative,' the probability of success factor is the most significant." *Home Instead, Inc. v. Florance*, 721 F.3d 494, 497 (8th Cir. 2013) (quoting *Dataphase*, 640 F.2d at 113 (internal citation omitted)). Therefore, the Court will begin its analysis there.

### A. Plaintiffs have not demonstrated that they are likely to succeed on the merits of their due process claim.

Plaintiffs allege violations of their due process rights in that they do not expect to receive a hearing and decision from an administrative law judge within the statutorily-prescribed period for that procedure. To determine what process Plaintiffs are due, *Mathews* provides four factors: "[1] the private interest that will be affected by the official action; . . . [2] the risk of an erroneous deprivation[;] . . . [3] the probable value, if any, of additional or substitute procedural safeguards; and . . . [4] the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *A1 Diabetes & Med. Supply v. Azar*, 937 F.3d 613, 619 (6th Cir. 2019) (quoting 424 U.S. at 335).

Plaintiffs argue that they are likely to succeed on the merits of their claims before the administrative law judge—namely, whether Plaintiffs provided and then properly documented medically necessary services and whether the statistical model of extrapolating the sum overpaid to the Plaintiffs is fundamentally flawed. Doc. [3-1] at 11-12. But the Court does not have the authority to issue injunctive relief based on any putative merits of those claims. Plaintiffs' claim

5

here is whether Defendants, by violating the Medicare Act's requirements to provide a hearing and decision by an administrative law judge within 90 days, violate Plaintiffs' due process rights. The likelihood of prevailing on the merits of that claim are not addressed in Plaintiffs' initial brief. In their reply, Plaintiffs provide a single authority that provides no analysis on this factor. Doc. [15] at 8 (citing *Hospice Savannah, Inc. v. Burwell*, 2015 WL 8488432, *1-2 (S.D. Ga. Sept. 21, 2015)). As a result, Plaintiffs have decidedly not made a "clear showing" that they are likely to succeed on the merits. *Winter*, 555 U.S. at 22.

Additionally, Plaintiffs have not distinguished this case from the weight of existing circuit authority. For example, the Fourth Circuit rejected the argument that a delay in the administrative process violated due process: "because the administrative process anticipates and accommodates potential delays in obtaining ALJ review, the due process validity of the process does not depend on the timeliness of an ALJ hearing." *Accident, Injury and Rehab., PC v. Azar*, 943 F.3d 195, 204-05 (4th Cir. 2019). Similarly, the Fifth Circuit affirmed dismissal of a nearly-identical due process claim, finding that the plaintiff "received some procedure, chose to forego additional protections, and cannot demonstrate the additional value of the hearing it requests." *Sahara Health Care, Inc. v. Azar*, 975 F.3d 523, 533 (5th Cir. 2020).[2]

Plaintiffs argue that *Sahara* is distinguishable from this case, because the plaintiff in *Sahara* did not explain the additional value of the hearing before the administrative law judge, but "Padda *can* demonstrate the additional value of an ALJ hearing, particularly as it relates to his ability to present the testimony of his statistical expert and his ability to ask for discovery . . . ." Doc. [15] at 7. That argument is not compelling in the face of clear authority indicating that Plaintiffs are not entitled under the due process clause to present evidence in a particular way. "Agencies are not required to provide trial-like procedures unless mandated to do so by Congress." *Bremer v. Johnson*, 834 F.3d 925, 933 (8th Cir. 2016). Because the Medicare Act explicitly provides alternative routes for review when a hearing before an administrative law judge cannot be provided within 90 days of the request, the Court finds that Congress has not so mandated.

---

[2] In its briefing and oral argument, Plaintiffs relied heavily on *Med-Cert Home Care, LLC v. Azar*, 444 F. Supp. 3d 756 (N.D. Tex. Mar. 11, 2020). In that case, the district court issued an injunction, and in light of *Sahara*, the Fifth Circuit summarily reversed. No. 20-10443 (5th Cir. Feb. 10, 2021).

For the foregoing reasons, the Court is not persuaded that Plaintiffs are likely to succeed on the merits of their due process claim.

### B. Plaintiffs have not proven that they will suffer irreparable harm in the absence of an injunction.

"In order to demonstrate irreparable harm, a party must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief." *Iowa Utils. Bd. v. F.C.C.*, 109 F.3d 418, 425 (8th Cir. 1996). Plaintiffs have failed to meet that high standard.

Plaintiffs' only evidence of irreparable harm is Dr. Padda's declaration that he will have to close his practice "within one month, or possibly immediately, if recoupment of $5,964,295 occurs." Doc. [3-2] ¶ 16. Plaintiffs provide no context for that claim except the assertion that 65% of the practice's total revenue comes from Medicare. *Id.* ¶ 16. There are several problems with Dr. Padda's declaration as the basis for his claim of irreparable harm. First, it misstates the amount that is subject to recoupment. Second, its critical claims are ambiguous. For example, it is unclear whether Dr. Padda claims that his practice would be ruined by an *immediate* recoupment of the entire alleged overpayment (~$5.5M) or by even the less draconian recoupment of his alleged overpayments by means of an offset against future reimbursements. Third, the declaration makes opaque references to other circumstances that have already jeopardized Dr. Padda's financial state. For example, the declaration states that "the Practice has already lost approximately 60% of total revenue and a significant portion of its Medicare patients as a direct result of actions taken by Medicare related to this billing dispute." *Id.* ¶ 15.

Collectively, those problems undermine the Court's ability to evaluate the credibility of Dr. Padda's claims. If 60% of the practice's income is already lost, how much monthly Medicare income remains to be withheld? What proportion is that of the practice's current revenues? And if the practice's finances are already so tenuous, how much "irreparable harm" would an injunction from this Court prevent? Those and other critical questions are unanswerable on the basis of Dr. Padda's declaration alone. Also unanswerable on the current record is whether Plaintiffs could avoid or minimize any possible harm by seeking an extended repayment plan, as allowed by statute, to reduce their monthly payments. Plaintiffs admit that they have not applied for such a plan, calling into question whether the harm they forecast is imminent and certain.

The Court cannot deny that, on the current record, it is possible that Plaintiffs will suffer significant harm without an immediate injunction against recoupment. But it is Plaintiffs' burden to show that such "harm is certain and great and of such imminence that there is a clear and present need for equitable relief." *Iowa Utils. Bd.*, 109 F.3d at 425. On the current record, they have not done so.

### C. The remaining factors do not mandate injunctive relief.

One of the remaining *Dataphase* factors requires the Court to balance the likely harm to Plaintiffs in the absence of an injunction against the harm that granting the injunction will inflict on other parties. It is impossible for the Court to do that balancing without being able to evaluate the likely harm to Plaintiffs. *See Compassus*, 2018 WL 6179533, at *3. The final factor requires the Court to consider the public interest, as to which both parties have made persuasive arguments. *See* Doc. [3-1] at 15; Doc. [12-1] at 32-33; Doc. [15] at 11.

Considering the inconclusive analyses of these two factors in light of Plaintiffs' low probability of success on the merits and failure to show irreparable harm, the Court finds that Plaintiffs have not made "a clear showing" that they are entitled to the extraordinary remedy of injunctive relief. *Winter*, 555 U.S. at 22; *see also Se. Ark. Hosp., Inc. v. Sebelius*, 1 F. Supp. 3d 915, 926 (E.D. Ark. Feb. 20, 2014) (preliminary injunction denied when plaintiff's showing on three other factors did not "overcome its failure to make the requisite threshold showing of likelihood of success on the merits").

## IV.   Conclusion

Accordingly,

**IT IS HEREBY ORDERED** that the Motion for Temporary Order and Preliminary Injunction is **DENIED**.

**IT IS FURTHER ORDERED** that any motion for expedited discovery and a preliminary injunction hearing must be filed no later than Friday, May 14, 2021.

Dated this 11th day of May, 2021.

_____
SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE